**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**FELIX SIMS,**                              :

    **Plaintiff,**                        :

**vs.**                                      :   **CA 08-0377-C**

**MICHAEL J. ASTRUE,**                       :
**Commissioner of Social Security,**

    **Defendant.**                        :

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 22.) Upon consideration of the administrative record, Plaintiff's proposed report and recommendation, the Commissioner's brief, and the parties' arguments made at the October 29, 2008 hearing before the court, it is determined that the Commissioner's decision denying benefits was proper and should not be disturbed.[1]

The two issues that Sims raises on appeal concern the ALJ's

---

[1] Any appeal taken from this memorandum opinion and order shall be made to the Eleventh Circuit Court of Appeals, as the parties have previously agreed. (Docs. 21 & 22.)

treatment of his obesity: that the ALJ erred first by failing to find Sims' obesity a "severe" impairment, and then by failing to properly consider Sims' obesity in determining his residual functional capacity (RFC). (Doc. 13, p. 1-2.) The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant has not engaged in any *documented* substantial gainful activity since his current application filing date March 13, 2006 (20 C.F.R. §§ 416.920(b) and 416.971 *et seq*.).**
>
> The first inquiry in the aforementioned five-step sequential evaluation process involves determining whether or not the claimant has engaged in substantial gainful activity. The Administration has established several "evaluation guides" to assist in answering this inquiry. If a claimant's earnings average more than a specified amount per month, there is a presumption that the claimant has engaged in substantial gainful activity (SGA). Conversely, if the earnings average less than a specific amount per month, there is a presumption that the claimant has **not** engaged in substantial gainful activity. The specified monthly amount of earnings generally representative of substantial gainful activity are $300 or more prior to 1990, $500 or more for the period January 1, 1990 to July 1, 1999, $700 or more from July 1, 1999 to December 31, 2000, $740 from January 1, 2001 to December 31, 2001, $780 per month during calendar 2002, $800 per month during calendar 2003, $810 per month during calendar 2004, $830 per month in calendar 2005, $860 per month in 2006, $900 per month in 2007, and $940 per month after January 1, 2008 (20 C.F.R. §§ 416.974 and 416.975). The record does not ever definitively document the claimant's performance of work at a level commensurate with substantial gainful employment, i.e. going all the way back to 1991 or during his life-time. While the claimant acknowledges working in a variety of temporary part-time laborer jobs, no specific earnings at the SGA level are documented (Exhibit 1D).

Thus, a determination in the present case clearly cannot be based on work activity alone.

**2. The claimant has the following severe impairments: a history of complex partial seizures that are now stable and properly controlled by prescribed anti-convulsant medication, degenerative disc disease of the lumbar spine, and degenerative osteoarthritis in the knee joints (20 C.F.R. § 416.920(c)).**

I must next pursue a second inquiry which involves determining whether or not the claimant has an impairment or combination of impairments that significantly limits his physical or mental ability to perform certain basic work-related activities. Such an impairment or combination of impairments must either be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least twelve months." (20 C.F.R. §§ 404.1509 and 416.909); see Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) - (No severe impairment meeting the durational requirement; Holley v. Chater, 931 F.Supp. 840, 849 (S.D.Fla. 1996) - (no evidence of diagnosed depression for twelve continuous months) Cf. McSwain v. Bowen, 814 F.2d 617, 620 (11th Cir. 1987) - "Episodic" events of depression.

Statements offered by a claimant about his disability are **not alone sufficient** to establish the existence of a severe impairment (20 C.F.R. §§ 404.1508, 404.1528, 416.908, and 416.928). The record must also document the existence of an abnormality that is **objectively demonstrated by medically acceptable, clinical and laboratory diagnostic techniques**. In assessing a claimant's credibility regarding his alleged sever, functionally[-]limiting impairments, an Administrative Law Judge must consider, in addition to the objective medical evidence, such factors as the claimant's activities of daily living, the location, duration, and identity of the symptoms described, medication and its effectiveness and side effects, and treatment other than medication that the claimant has received (Social Security Ruling 96-7p). An Administrative Law Judge must also consider any observations recorded by Agency employees during interviews, whether conducted in

person or by telephone (Social Security Ruling 96-7p).

This standard of review is crucial in the present case, as the claimant reports many severe symptoms of a debilitating nature that are either incongruent with established physical disorders or unsubstantiated by objectively[-]demonstrable medical evidence.  Nevertheless, the preponderance of the evidence does establish that the claimant possesses a combination of physical impairments imposing some significant work-related functional limitations on him.  For instance, his ability to engage in any work exposing him to dangerous moving machinery, unprotected heights, or other high[-]risk workplace hazards is likely compromised by his possession of longstanding seizures that, even when controlled, could harm him or others during a breakthrough episode.  Yet, the record is clear [that] the claimant has sustained no verifiable seizures for over 4 years (Exhibit 5F).  The claimant was described in an April 19, 2006 [sic] as being "seizure free" by his own account since June 2003.  His condition has routinely been characterized as "stable" and well "controlled" [sic] by such prescribed medicines as Tegretol and Phenobarbitol.  The claimant readily admits regularly driving an automobile with a valid Alabama driver's license.  The claimant grocery shops, cleans, irons, washes and dries laundry, cooks, and otherwise keeps up the residence in which he lives.  Despite assertions about frequent lethargy and drowsiness, I note the claimant admits to frequently reading and working crossword puzzles for pleasure.  The above range of activities is hardly indicative of continuing debilitating seizures.  To the contrary, the record confirms that the claimant's epilepsy is well[-]controlled.  The environmental limitations listed above are merely precautionary in nature.

The claimant's capacity for prolonged to continuous amounts of standing and walking is likely compromised significantly by obejectively[-]confirmed "patellofemoral chondrosis" in his knees.  I acknowledge the existence of the same severe, functionally[-]limiting impairment based primarily on reports maintained by Dr. Albert W. Pearsall, IV, throughout calendar 2005 and 2006 (Exhibit 2).  His diagnostic assessments are

4

predicated on a variety of clinical test results, including x-ray series, and numerous recorded physical examination findings. However, the record is free and clear of any more serious complications[,] like internal derangement or other similar advanced degenerative changes requiring surgical intervention. To the contrary[,] the claimant has kept a fairly intact range of knee motion without recorded give-away muscle weakness or reflex or sensory deficits. His gait is normal and unaided; and his admitted daily activities suggest he is still quite able to stand and walk the 2 hours per day needed to engage in a full range of sedentary physical activities (20 C.F.R. § 416.967(a)).

The claimant's most significant impairments probably involve his lumbar spine. A January 2006 lumbar spinal MRI study confirmed the presence of moderately[-]severe disc degeneration, located primarily at the L4-5 level (Exhibit 2). The degeneration is reportedly marked by significant disc protrusion, annular bulging, foraminal stenosis, facet joint hypertrophy, some central spinal canal stenosis, and hypertrophy of the ligamentous flavum. Yet again, the claimant's own description of a continuing wide array of daily activities belied his testimonial assertions regarding an inability to stand or sit longer than 30 minutes. Also, treatment records reflect no acute debilitating symptoms requiring hospitalization or surgical intervention. There certainly has been no additional evidence submitted with this appeal to justify reaching any different conclusion about the claimant's residual functional capacity level than that established by Judge Ragland two years ago. I note that the claimant's condition has not necessitated his regular medical treatment for incapacitating pain; nor has it required more drastic measures than his daily use of a relatively[-]mild prescribed medication, Soma. For instance, I see no documented prior administration of epidural steroid injections or facet joint blocks, which are treatment measures reserved for more intractable types of pain. Furthermore, the claimant has exhibited no substantial loss of range of motion with his lower back or has any discernible reflex or sensory deficits, muscle weakness, motor in-coordination, or other signs of chronic radiculopathy in the lower extremities, i.e. indicative

of bona[-]fide neurological deficits from actual neural compromise.

**3.  The claimant does not possess singular or combined physical impairments that have met or equaled one or more of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). The claimant's musculoskeletal and neurological impairments have specifically not satisfied any "Listing" criteria under Sections 1.01 and 11.01, et seq.**

I have already established how the claimant has stayed "seizure free" for the last 4+ years. His knee arthritis and lumbar spinal disc degeneration do not even approach the presumptively disabling level of severity described in the applicable "Listing" sections.

**4.  After careful consideration of the entire record, I find that the claimant has possessed the residual functional capacity since March 2006 to perform a full range of at least sedentary exertional[-]level work (20 C.F.R. §§ 404.1567(b) and 416.967(b)).**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p[,] and 96-6p.

However, the claimant has not sought treatment in the frequency one would expect from an individual truly experiencing pain and other symptoms in totally disabling severity, frequency, and duration. Indeed, the claimant has not even been hospitalized due to his alleged debilitating symptoms at any point since March 2006. No treating medical source has rendered an opinion supportive of the claimant's subjective assertions either. The record simply

6

does not contain objectively[-]demonstrable medical evidence supporting the degree of symptoms described by Mr. Sims since March 2006.  Moreover, the objective medical evidence I have reviewed clearly fails to identify reliable manifestations of disabling symptoms from the less severe conditions documented.  The claimant's demonstrated ability to work periodically since March 2006 further undermines the validity of his symptomatic assertions.  Indeed, an alleged weakened, lethargic, drowsy, and debilitated individual like the claimant [sic] was able to work for a local restaurant during two quarters of calendar 2006.  Finally, I also find serious deficits in the claimant's credibility from his own reported daily activities; of which several are inconsistent with a debilitating lower back condition, i.e. [sic] washing dishes, loading, unloading, and folding laundry, house-cleaning [sic], or cooking.

**5.  The claimant has no past vocationally[-]relevant work to which he could return if he wanted (20 C.F.R. § 416.965).  The description of the claimant's previous employment by a vocational expert witness at the July 11, 2007 hearing is not commensurate with the definition of substantial gainful work activity.  The claimant's earnings have also never been at a level indicative of substantial gainful employment during any calendar year in his life-time** [sic]**.**

**6.  Therefore, I must now assess the claimant's capacity to make a successful vocational adjustment to other types of work existing in significant numbers in the national economy in light of his individually[-]considered age, educational background, work experience, and other vocational characteristics (see generally 20 C.F.R. §§ 416.966(b), 416.963, 416.964, and 416.920(f)).  The burden of proof is on the Social Security Administration at this juncture to set forth a viable evidentiary basis for finding the claimant fully able to make a successful occupational and vocational transition to significant numbers of jobs in the national economy.  The Medical-Vocational guidelines contained in Appendix 2 of Subpart P to Regulations No. 4 can be used as a guide for decision[-]making in this**

**regard; and it can be supplemented with impartial vocational expert testimony (20 C.F.R. §§ 416.966, 416.968, 416.969, and 416.969a).**

I established at the hearing that the claimant retained the residual functional capacity to perform work at the sedentary level of exertion[,] as previously established by Judge Ragland in his unfavorable February 13, 2006 cessation affirmation.  The same hypothetical physical limitations, along with a consideration of a younger individual 48 years of age with a high school diploma, limited college training, and no vocationally[-]relevant work history, as set forth in Exhibits Folder E, were presented to Mr. Anderson at the hearing to secure his expert opinion as a Certified Vocational Rehabilitation Specialist.  In response to the same question, Mr. Anderson testified that such a hypothetical individual could perform a vast array of sedentary jobs existing in significant numbers in the state of Alabama and the national economy.  He provided numerous examples of the same types of employment and referenced the incidence of such work in large numbers (See my previous discussion).  Mr. Anderson cited employment as an assembler and surveillance system monitor as examples of jobs existing in significant numbers in the national economy for an individual similarly situated to the claimant.  He stated that the two categories of jobs existed in the following respective state and national numbers: (1) assembler - sedentary unskilled - 1,300 and 59,000 and (2) surveillance system monitor - sedentary unskilled - 464 and 43,000.  Mr. Tonder presented a complicated cross-hypothetical question predicated on the viability of the claimant's own subjective statements.  However for a myriad of reasons already articulated, no proper evidentiary foundation exists to find the claimant functionally limited to the degree described in attorney Tonder's cross[-]hypothetical questions of the vocational expert witness. Mr. Anderson's responses to the same question are, as a result, irrelevant and immaterial to the current disposition.  Mr. Anderson offered his testimony in full compliance with the Dictionary of Occupational Titles (SSR 00-4p).  Indeed, he cited the D.O.T. codes containing the descriptions of the same jobs and fully considered the potential additional restrictions placed on the

8

> available occupational base for the claimant, including the precautionary environmental restrictions associated with the unlikely possibility of another seizure.
>
> I conclude that the utilization of a vocational expert witness in this case has satisfied the Commissioner's burden of providing a sufficient evidentiary basis on which to conclude that the claimant is not disabled at the 5th and final step of the sequential evaluation process.  Mr. Anderson's testimony clearly establishes under the framework of Vocational Rule 201.21 that the claimant can make a successful vocational adaptation to significant numbers of, at least, sedentary jobs in the national economy.
>
> **6. The claimant has not been under a "disability," as defined in the Social Security Act, from March 13, 2006 through the date of this decision (20 C.F.R. § 416.920(f)).**

(Tr. 23-28.)  The Appeals Council denied Mr. Sims' request for review, and so the hearing decision became the final decision of the Commissioner of Social Security.  (Tr. 2-4.)

## **DISCUSSION**

The undersigned initially notes that to establish disability, a claimant must demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically-determinable physical or mental impairment expected to result in death or to last twelve or more continuous months.  42 U.S.C. §§ 423(d)(1)(A).  Importantly, the disability itself, not the impairments alone, must satisfy the durational requirement.  *Barnhart v. Walton*, 535 U.S. 212, 220 (2002).

The task for the Magistrate Judge is to determine whether the

Commissioner's decision to deny the claimant benefits on the basis that he did not have a severe mental or physical impairment (namely, obesity) for twelve consecutive months is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As the Eleventh Circuit has stated, when determining whether substantial evidence exists, "we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits his or her physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) ("At the second step, [the claimant] must prove that she has a severe impairment or combination of impairments."), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

10

understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").[2]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and the informed judgment about its (their) limiting effects on the

---

[2] It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*. *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

11

> individual's physical and mental ability(ies) to perform basic
> work activities; thus, an assessment of the function is inherent
> in the medical process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "[his or] her impairment is not so slight and its effect is not so minimal." *Id*.

Even under these lax standards, the Court finds that Plaintiff has not established his obesity as a severe impairment.

### I.     Why Plaintiff's Obesity Is Not a Severe Impairment

As Plaintiff himself recognizes, 20 C.F.R. § 404.1521(a) states that a given impairment will not be found to be severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." The statute continues: "When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs." *Id*. Sims next points to Social Security Ruling (SSR) 85-28, an important document for a few reasons. First, SSR 85-28 restates the "basic definition of disability" as an individual suffering, as an initial requirement, a "physical or mental impairment . . . which is expected to either result in death or to last at least 12 months." *Id*. at * 1 (internal citations omitted). SSR 85-28 also contains the following pronouncement:

> The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment.
>
> Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered. Under 20 CFR, sections 404.1523 and 416.923, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone. A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

*Id*. at *3.

Essentially, Sims argues that because he is six feet tall, weighs between 284 and 290 pounds, and was counseled by a doctor "regarding his back problems and weight loss," his obesity is a severe impairment. (Doc. 13, p. 4.) The first problem with this contention is that the evidence that

Sims was counseled by a doctor regarding his obesity is not actually in the transcript. Sims indicated in his brief that transcript pages 223 and 224 contain these consultations, but an examination of the record reveals that this is not the case. (*Id.*; Tr. at 223-24.) Importantly, such records, even if found, would still fail to persuade the undersigned in Sims' favor, as a simple statement by a doctor that a patient could stand to lose weight does not amount to a reasonable inference of a severe impairment or any type of disability.

There is, however, an abundance of medical evidence vindicating the ALJ's decision that Sims' obesity is not a severe impairment. On November 11, 2005, for instance, Dr. Andre J. Fontana performed a consultative physical examination of Sims, and noted absolutely nothing regarding obesity or any limiting effects thereof. (Tr. at 332-33.) Dr. Fontana's Physical Capacities Evaluation (PCE) sheet reports that Sims could sit for an hour at a time for up to six hours in an 8-hour workday, could stand or walk for an hour at a time for a total of four hours, could occasionally lift from 11-20 lbs., could frequently lift from 6-10 lbs., and could continuously lift up to 5 lbs. (Tr. at 334.) The ALJ's reliance, then, on Dr. Fontana's PCE was both proper and substantially justified. *See Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (ALJ must accord "substantial" or "considerable" weight to a treating physician in the

absence of "good cause" to the contrary).

In addition to Dr. Fontana's PCE, the ALJ notes that John L. Hinton, M.D., completed a physical examination (PE) of Sims in which he described the claimant as a "well[-]developed, well[-]nourished, powerfully[-]built man." (Tr. at 233.) Although this PE was completed on July 14, 1999, it is additionally noteworthy that Dr. Hinton noted that Sims' strength was "full and equal in the bilateral upper and lower extremities." (Tr. at 234.) Finally, during a mental examination with Annie Formwalt, Psy. D., Claimant admitted that he was able to go to clubs to see bands play, eat prk chops at 1:00 a.m., cook, clean his apartment, wash and dry clothes, go grocery shopping, and go bowling. (Tr. at 325-36.) Other documents show that Sims has admitted he has "no trouble walking or moving about on a daily basis" and that he had "no problem" with household maintenance activities described as "cooking, cleaning, shopping, and odd jobs around the house" etc. (Tr. at 338-39.) This evidence fully supports a finding that the ALJ's decision was itself supported by substantial evidence. *See Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (ALJ free to consider daily activities at the second step of the analysis). Therefore, Sims has not carried his burden of showing that his obesity was/is a severe impairment under the meaning of the Act. *See* SSR 96-3p; *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D.Ala. 2002) (stating that "[o]bjective medical

evidence must confirm that the impairment is severe."). The undersigned also notes that, as the ALJ points out, even if Sims' obesity should have been deemed a severe impairment, such error is harmless where the ALJ's ultimate decision would not be affected thereby. *Miller v. Barnhart*, 182 Fed.Appx. 959, 964 (11th Cir. 2006). Certainly claimant's weight was an observable factor for Dr. Fontana when the latter completed his PCE; therefore, it is implicit in the findings therein that Sims' obesity did not play a significant role in Dr. Fontana's assessment.

Taking into account the foregoing evidence, it is readily apparent to the undersigned that the ALJ's determination that Plaintiff's obesity was not a severe impairment is supported by substantial evidence.

## II.     Why There Is No Error in the ALJ's RFC Assessment

As mentioned earlier, the ALJ's RFC assessment is supported by substantial evidence and reflects the ALJ's consideration of all of Sims' impairments. Sims points to SSR 02-01p as support for his proposition that the ALJ did not properly consider his obesity when forming his RFC, but the language of that ordinance (recreated in full in Plaintiff's Brief (Doc. 13, p. 6.)) itself provides a reason for its inappositeness: obesity must first be identified as a "medically[-]determinable impairment." SSR 02-01p. Since there is no indication that any medical source has viewed Sims' obesity as an impairment, 02-01p does not bring itself to bear on the current

situation.

Sims next invokes the standard that an ALJ must consider the effects, in combination, of all of a claimant's impairments in determining disability, following *Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993), but as mentioned earlier, it is clear to the undersigned that the medical records relied on by the ALJ carried with them implicit assertions regarding Sims' obesity. (Doc. 13, p. 6.)

Finally, Sims argues that the case of *Williams v. Barnhart*, 186 F.Supp.2d 1192 (M.D.Ala. 2002) controls here. The glaring distinction in the fact patterns of that case and the current one, however, is that the claimant in *Williams* had been *diagnosed* as *morbidly obese* by at least two doctors, diagnosed as simply "obese" by another, and labeled "obese" by a fourth. *Id*. at 1198. Also readily apparent is the fact that the AlJ in *Williams* "made no express determination" regarding at least three of the claimant's *other* listed impairments, namely her coronary disease, asthma, and glaucoma. *Id*. Instead, the current fact pattern much more closely resembles that in *Vickers v. Astrue*, 2009 WL 722273 (N.D.Fla.). There, the Court noted that the plaintiff "has not established that he has any actual limitations caused by his obesity" and that the Court could not find any evidence in the record "demonstrating that limitations have been placed on Plaintiff as a result of his weight, and Plaintiff has not pointed to any such

17

evidence on the record." *Id.* at *14.  Distinguishing *Williams*, *supra*, the

*Vickers* Court continued:

> In *Williams*, the claimant had been repeatedly diagnosed as obese, and on at least one occasion she was diagnosed as morbidly obese, and at least two physicians had advised her to lose weight, but despite the diagnoses and recommendations[,] the ALJ did not consider her obesity when determining whether she had severe impairments at step two.  In the instant case, not only is there is [sic] no evidence that limitations have been placed on Plaintiff's functioning as a result of his weight, [but] Plaintiff has never been diagnosed with obesity, much less diagnosed as being morbidly obese or repeatedly diagnosed as obese.

*Id.* at *14 (internal citations omitted).  The Court later noted that the

claimant had been, as Sims alleges, advised to lose weight on one occasion,

but that the record was void of any actual "*diagnosis* of obesity."  *Id.*

(emphasis in original).

Based on the totality of the medical evidence, then, it cannot be said

that the ALJ's RFC assessment was or is improper.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social

Security denying Plaintiff benefits be **AFFIRMED**.

**DONE AND ORDERED** this 20th day of May, 2009.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE